ANNE MARIE HAGERTY, TRANSFEREE, BY NEXT FRIEND, M. PATRICK HAGERTY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hagerty v. Comm'r
Docket Nos. 8323-72, 8331-72, 8327-72, and 8328-72, 8332-72. United States Tax Court
T.C. Memo 1975-66; 1975 Tax Ct. Memo LEXIS 305; 34 T.C.M. (CCH) 356; T.C.M. (RIA) 750066; March 19, 1975, Filed *305 Stephen A. Seall, for the petitioners. Robert P. Ruwe, for the respondent. Judge Irwin
Irwin
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent asserted transferee liability against each petitioner in the amount of $6,597.54 for the following deficiency and addition thereto determined against petitioners' parents, William J. Hagerty and Carol Patton Hagerty (the Hagertys): Addition to Tax Year
Deficiency
under Sec. 6653(a) [2]
1968
$9,118.65
$455.93 Petitioners having stipulated that they are liable as transferees within the meaning of section 6901 if any deficiency (and addition thereto) is determined due from the Hagertys, the following issues are left for our determination: (1) whether the Hagertys are entitled to a casualty loss deduction of $19,700.01 for a fire which damaged their residence in 1968; and (2) whether the Hagertys are entitled to a medical expense deduction for the cost of a central air conditioning and air cleaning unit installed in their residence in 1968. If we find that any deficiency exists, we must *306 then determine whether the underpayment was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Finally, if we find that any deficiency (and addition thereto) is due from the Hagertys, then we must also determine the fair market value of an undivided one-fifth interest in the property transferred by them to petitioners on July 18, 1969. FINDINGS OF FACT Some of the facts have been stipulated and these facts, together with the exhibits attached thereto, are found accordingly. Petitioners Anne Marie Hagerty, Mary Louise Hagerty and Amy Jo Patton Hagerty are the daughters of William J. and Carol Patton Hagerty and resided in Monte Carlo, Monaco, at the time of the filing of their petitions with this Court. Petitioners Kathleen Ann Fiedler and Colleen Marie Fiedler are the daughters of William J. Hagerty and resided in South Bend, Ind., at the time of the filing of their petitions with this Court. On August 31, 1967, the Hagertys purchased a large two-story residence located at 1320 East Woodside, South Bend, Ind., for $78,000. The Woodside address is within what is known as Ridgedale, an exclusive residential area in South *307 Bend. The house was a wood frame structure with brick veneer and contained four bedrooms, three full baths, two half baths, a formal dining room, a service pantry, an extra large kitchen, an extra large living room, a den, a complete family room in the basement and an attached garage. On March 29, 1968, a very severe fire occurred at the residence, burning the roof off the second story and burning through certain ceilings on the second floor causing them to collapse so that certain portions of the second floor and portions of the first floor adjacent to the stairway were completely open to the elements. As a result of this fire most of the house suffered heat, smoke and water damage. At the time of the fire the residence was insured by American States Insurance Company (American). The policy provided coverage up to the following maximum amounts: Coverage A - Dwelling: $50,000; Coverage B - Appurtenant Structures: $5,000; Coverage C - Unscheduled Personal Property: $20,000; and Coverage D - Additional Living Expenses: $10,000. Since the garage was attached to the residence, the maximum liability of the insurance company for fire loss to the house was $55,000. Pursuant to the policy, *308 depreciation with respect to the dwelling was not to be taken into account in determining any amounts payable. Immediately after the fire William J. Hagerty retained Thomas L. Hickey, Inc., Contractors and Engineers (Hickey), a construction company located in South Bend, to inspect the Woodside property for the purpose of recommending such repairs as were necessary to restore the residence to its pre-fire condition. On April 8, 1968, Doyle H. Baum, then chief estimator and engineer for Hicky, and Tony Papandria, another Hickey employee, inspected the residence. As a result of this inspection, Mr. Baum sent a letter dated April 10, 1968, to the Hagertys recommending the repair work he and Mr. Papandria believed necessary to restore the house to its pre-fire condition. Among the major recommendations contained in the letter were the following: that approximately 12 feet of the chimney at the west end of the house must be reconstructed; that approximately five feet of the chimney at the east end of the house must be reconstructed; that a portion of the brick gable veneering on the east end of the house will require replacement; that approximately 12 feet of the chimney on the south *309 side of the house must be torn down and reconstructed; that the entire gable brick veneering on the west end of the house has been badly damaged; that all of the interior trim, casing, moldings, etc., must be replaced with new trim to match; that due to water damage the plaster should be completely stripped from all of the interior walls of the house and such walls replastered; and that there should be a complete re-roofing. This report was not presented to American. Robert M. Gaseor (Gaseor), the claims manager for American's South Bend branch, requested Allied Construction Company (Allied) to bid on the repairs to be made to the residence. Allied is a small general contracting company in South Bend owned by Thomas E. Reed, Jr. (Reed). Approximately 90 percent of its business comes to it through various insurance companies. On the day after the fire, Reed and his foreman inspected the damage to the house and subsequent thereto prepared cost and repair estimates. In preparing the estimates, Reed obtained the assistance of masonry, plastering, plumbing, and electrical subcontractors. Upon the recommendation of Gaseor, Allied was subsequently selected to do the repairs to the *310 residence. Pursuant to the estimates, Allied charged $10,327.92 for repairing the roof and $21,199.18 for repairing the interior. $1,024.31 was charged for the masonry and plumbing work. American made these payments and in addition paid Allied $332.40 for temporary repairs and paid S. A. Molenda Antenna Service $620.76 to replace a large antenna damaged by the fire. The total amount which American paid to repair the residence was $33,504.57. In repairing the gables and chimneys, Allied did not reconstruct the damaged portions; rather the repairing consisted of tuck-pointing and veneering or patching. Allied estimated $626 for such masonry. Subsequent to the repair work some of the brick was spalling (peeling or flaking off). Spalling can be caused by exposing brick to the extreme heat of a fire. In repairing the interior, Allied replastered most of the ceilings on the second floor and certain of the walls, rather than completely stripping and replastering all the walls and ceilings. The walls and ceilings not replastered were either patched or washed and painted. Subsequent to the repair work, some of the plaster began to show cracks. Parts of the interior did not have the visual *311 appearance they had prior to the fire. Allied did not replace all of the interior wood trim. The restoration of the house was completed in October 1968. The repair work, while satisfactory, did not restore the residence to its pre-fire condition or value. During the period the repairs were being made, the Hagertys made the following improvements: installation of a central air conditioning and air cleaning system costing $2,104; installation of a new gas furnace costing $809; installation of a dishwasher costing $255.35; installation of built-in kitchen cabinets costing $250; installation of a built-in stove costing $529.90 and general remodeling costing $1,456.65. The central air conditioning and air cleaning system was installed on the advice of Carol Patton Hagerty's physicians to help control her chronic bronchitis and allergies. Indiana law provides that assessed values are to be an amount equal to one-third of the true cash value of the property. Ind. Ann. Stat. sec. 64-309 (1961). As of March 1, 1962, the dwelling (exclusive of the land and "summer house") was assessed at $17,650. This assessed value remained in effect until March 1, 1969, when the dwelling was reassessed *312 at $13,640. The total assessed value for the property on March 1, 1962, was $24,000 and on March 1, 1969, $23,860. Prior to the purchase of the residence by the Hagertys, the house was owned by Joseph and Barbara DeFranco who had purchased it in 1962 for $72,000. On July 18, 1969, the Hagertys conveyed as a gift the Woodside residence by quit claim deed to petitioners as tenants in common, each receiving an undivided one-fifth interest. At the time of the transfer the property was encumbered with a mortgage with an outstanding balance of $32,452.59. There were no other liens or other mortgages on this property at that time. As of the date of transfer the fair market value of the property was at least $65,440. On July 17, 1973, petitioners conveyed their interest in the Woodside residence to J. Bruce Gafill, III, and Rita S. Gafill for $80,000. For the taxable year 1968 the Hagertys filed their joint Federal income tax return with the district director of internal revenue, Indianapolis, Ind. On their return they claimed a casualty loss resulting from the fire in the amount of $19,700.01. [3] They also claimed the cost of the central air conditioning and air cleaning unit as a *313 medical expense. The return was prepared by the Comptroller of William J. Hagerty and Sons, Inc., and was reviewed by their accountants who signed the return as the preparers. On October 1, 1971, respondent asserted a deficiency and addition to tax pursuant to section 6653(a) in the respective amounts of $9,118.65 and $455.93 against the Hagertys. The deficiency resulted from a disallowance of the above-mentioned casualty loss and medical expense deductions. The Hagertys did not file a petition with this Court contesting the deficiency and addition thereto. Pursuant to a levy respondent collected $699.64 of the deficiency and addition due. ULTIMATE FINDINGS OF FACT 1. The fair market value of the Woodside residence immediately before the fire was $78,000. 2. The fair market value of the Woodside residence *314 immediately after the fire was $35,000. 3. The repairs by Allied did not completely restore the Woodside residence to its pre-fire condition and value. 4. The fair market value of the property after the completion of repairs and improvements was $70,000. 5. The installation of the central air conditioning and air cleaning unit, which was installed for medical reasons, was a capital expenditure which increased the value of the property. OPINION The first issue presented is whether William J. and Carol Patton Hagerty are entitled to a casualty loss deduction for the fire damage to the Woodside residence in 1968. The burden of proof is upon petitioners. Welsh v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated by insurance or otherwise." In the case of a nonbusiness fire loss suffered by an individual the amount of the deduction is also subject to a $100 floor. Section 165(c)(3). When such a casualty occurs, it is well settled that the proper measure of the loss sustained is the difference between the value of the property immediately *315 before the casualty and its value immediately thereafter, not to exceed cost or other adjusted basis, and diminished by the amount compensated by insurance. Helvering v. Owens,305 U.S. 468, 471 (1939). See generally section 1.165-7(b)(1), Income Tax Regs.
Both parties acknowledge that the Hagertys sustained a casualty loss in 1968 as a result of the fire and that American paid $33,504.57 for all the repair work. The question presented is whether the repair work fully restored the residence to its pre-fire condition and thus fully compensated the Hagertys for their loss. While respondent contends that the loss was completely compensated for by insurance, petitioners submit that the compensation did not completely restore the residence to its pre-fire condition and that, therefore, the Hagertys sustained a loss in excess of the recovery plus the section 165(c)(3) $100 limitation. We agree with petitioners on this point. We note first that there is nothing in the Code or regulations that limits the deduction of the amount of the loss actually sustained to the amount of the insurance recovery. Jack R. Farber,57 T.C. 714, 718 (1972). The only relevance of insurance recovery *316 is that it must be subtracted from the total loss to determine the deductible amount. In determining the amount of loss deductible under section 165, two methods of valuation are acceptable: (1) the decrease in fair market value as a result of the casualty; and (2) the cost of repairs. Section 1.165-7(a)(2), Income Tax Regs.[4] Since in our judgment the repair work did not completely restore the residence to its pre-fire condition, we are left with the former test. The question of the extent of decrease in the value of property is one of fact. Donald G. Graham,35 T.C. 273, 278 (1960). *317 We recognize that the ascertainment of the fair market value before and after the fire is but a "tool" employed to measure the extent of the actual casualty loss. In making our determination, it seems readily evident that the fair market value of the property immediately after the fire can amount to no more than an estimate of what it will cost to repair the damage and restore the building to its former condition and subtracting that sum from the fair market value before the fire. [5]
Petitioners argue that the fair market value immediately before the fire was $78,962.08. In support of this contention they submit that the Woodside residence was purchased in 1967 for $78,000 in a bona fide arm's-length transaction. In addition they claim improvements totaling $962.08. However, as petitioners have not demonstrated that the improvements increased the value of the residence, we find that the fair market value of the house was $78,000 immediately before the March 29, 1968, fire. Petitioners have not demonstrated that any appreciation occurred between the date of purchase and fire. Petitioners submit *318 that the fair market value immediately after the fire was $25,000. All testimony relating to this figure was based on an appraisal by Les Menzie, a South Bend realtor who had participated in the sale of the residence to the Hagertys in 1967. As his appraisal was not submitted into evidence and as he was not asked to testify, we can give only minimal weight to such evidence. Cf. Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947). After a careful review of the testimony of the witnesses, the evidence of the cost of repairing the residence, and all other relevant factors presented, it is our judgment that the fair market value of the residence was $35,000 immediately after the fire, thus resulting in a casualty loss of $43,000 of which only $33,504.57 was compensated for by insurance. The second issue concerns the medical expense deduction for the installation of the central air conditioning and air cleaning unit. Section 1.213-1(e)(1)(iii), Income Tax Regs., [6] provides that a capital expenditure may qualify as a medical expense to the extent that the expenditure exceeds the increase in value of the related property. See generally Raymon *319 Gerard,37 T.C. 826 (1962). The burden of proof is upon petitioners to show that the cost exceeded the increment in value. Welsh v. Helvering,supra;Rule 142, Tax Court Rules of Practice and Procedure.In our judgment petitioners have not overcome their burden. Consequently, this deduction was properly disallowed. *320 With respect to the third issue, we find on this record that William J. and Carol Patton Hagerty are not liable for the section 6653(a) [7] addition to tax for claiming the casualty loss and medical deductions. Consequently, respondent erred in determining this addition to tax. It is, therefore, our judgment that each petitioner is liable as transferee, pursuant to section 6901, up to the amount asserted in respondent's notice of deficiency, for the deficiency in income tax of William J. and Carol Patton Hagerty as modified by this opinion. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Mary Louise Hagerty, Transferee, By Next Friend, M. Patrick Hagerty, Docket No. 8327-72; Amy Jo Patton Hagerty, Transferee, By Next Friend, M. Patrick Hagerty, Docket No. 8328-72; Kathleen Ann Fiedler, Transferee, By Next Friend, M. Patrick Hagerty, Docket No. 8331-72; and Colleen Marie Fiedler, Transferee, By Next Friend, M. Patrick Hagerty, Docket No. 8332-72.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. This $19,700.01 was determined as follows: Cost
$78,000.00
Improvements
962.08
Total
$78,962.08
Less: Assessed value after fire
25,000.00
$53,962.08
Insurance Reimbursement
$42,311.62
Less contents
8,149.55
34,162.07
Actual loss
$19,800.01
Less deduction
100.00↩
Total casualty loss
$19,700.01
4. (2) Method of valuation. (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property. (ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d)↩ the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.
5. See Leonard J. Jenard,T.C. Memo. 1961-70, 20 T.C.M. 346↩, 348 (1961).
6. (iii) Capital expenditures are generally not deductible for Federal income tax purposes. See section 263 and the regulations thereunder. However, an expenditure which otherwise qualifies as a medical expense under section 213 shall not be disqualified merely because it is a capital expenditure. For purposes of section 213 and this paragraph, a capital expenditure made by the taxpayer may qualify as a medical expense, if it has as its primary purpose the medical care * * * of the taxpayer, his spouse, or his dependent. Thus, a capital expenditure which is related only to the sick person and is not related to permanent improvement or betterment of property, if it otherwise qualifies as an expenditure for medical care, shall be deductible; * * * Moreover, a capital expenditure for permanent improvement or betterment of property which would not ordinarily be for the purpose of medical care (within the meaning of this paragraph) may, nevertheless, qualify as a medical expense to the extent that the expenditure exceeds the increase in the value of the related property, if the particular expenditure is related directly to medical care. * * * If, * * * by reason of this expenditure, it is determined that the value of the [property] * * * has not been increased, the entire cost * * * would qualify as a medical expense.↩
7. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩